SAM GEARY v. THE STATE.

No. 4087.   Decided February 26, 1908.

**Carrying Pistol—Sufficiency of Evidence.**

Where upon trial for unlawfully carrying a pistol the evidence showed that the defendant went out, from the house where he had had a personal altercation, some distance, secured a pistol and returned, evidently anticipating trouble with the person with whom he had had the altercation; and there was no immediate and pressing danger to defendant's life, or such as authorized him to go out and arm himself and return to the scene of the difficulty, the conviction is sustained.

Appeal from the County Court of Potter.   Tried below before the Hon. Sam R. Merrill.

Appeal from a conviction of unlawfully carrying a pistol; penalty, $100.

The opinion states the case.

*H. H. Cooper,* for appellant.—Lann v. State, 25 Texas Crim. App., 496; West v. State, 31 Texas Crim. Rep., 428; White v. State, 4 Texas Ct. Rep., 195.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for unlawfully carrying a pistol on and about his person, and his punishment assessed at a fine of $100.

The record does not contain any bills of exception. The essential facts substantially are without contradiction. Appellant assigned one ground in his motion for a new trial why the conviction was erroneous, to wit: insufficiency of the evidence. The statement of facts discloses that on or about the 15th of June, 1907, appellant had a pistol on his person in Savage's saloon in Amarillo. Defendant at the time was sitting by the witness Plemmons on a desk or table and made a gesture as if to draw a weapon, and as his hand came from his hip pocket, the witness grabbed it and took the pistol. On cross-examination this witness states that shortly prior to this appellant came into the saloon and went to the bar to take a drink, and in the crowd was a party commonly called "Catfish Kid," who walked up to the defendant while standing at the bar, and made some remark, which led to an altercation. During this altercation, "Catfish Kid" told appellant that he would beat his damned brains out, and also said to appellant, "You are fixing to get yourself killed." This occurred immediately after Savage had taken from the defendant a stick or a part of a chair-round. Appellant then left the saloon, but returned in ten to twenty minutes, and walking up to the bar, invited everybody to drink with him. No one responded to the invitation, whereupon appellant declined to drink. Appellant then walked over and sat down by the witness Plemmons. Appellant did not say anything to "Catfish Kid" on his return, but "Catfish Kid" continued to walk up and down the floor of the building, and "flipped" some pieces of pretzel at defendant. "Catfish Kid" then took a seat on a beer keg, some five or six feet north of defendant, and threw his arm back and threw a pretzel at the defendant, striking him in the face. Just as the pretzel left the hand of "Catfish Kid" and before it struck defendant, defendant started to get up from his seat and reaching for his pistol, with his right hand, when witness grabbed appellant and disarmed him. From the time of the first trouble or altercation to the time the witness took the pistol from appellant, occupied a space of ten to twenty minutes. There was no peace officer present during the time. Directly after the witness turned the pistol over to the barkeeper, Cunningham, a

deputy sheriff came in and all the parties separated. "Catfish Kid" was a strong robust man, weighing some 175 or 180 pounds; the defendant was drinking. Cunningham testified substantially, as did the witness Plemmons. Savage, the owner of the saloon, testified that some ten or fifteen minutes before the exhibition of the pistol, and while the parties were at the bar drinking, "Catfish Kid" walked up to appellant and they began a conversation. The witness did not notice what was said until after defendant had taken his drink and moved towards the north end of the bar, near where the witness was standing. The parties got into an altercation, and appellant struck at "Catfish Kid" and "Catfish Kid" struck at appellant a time or two. Defendant reached to his hip pocket as if to draw a weapon, and the witness caught his hand and took from his hip pocket a stick, being a piece of a chair-round. They separated: the defendant going out of the house. During this altercation "Catfish Kid" remarked to the witness that "he ought to beat his damned brains out, and that he ought to kill him." Appellant left the bar-room, was gone four or five minutes, according to this witness, and on returning walked up to the bar, inviting everybody to join him in taking a drink, which not being accepted by any of them, he himself refused to drink. The remainder of this witness' testimony is practically as was the witness Plemmons. Appellant testifying, in his own behalf, says he was standing at the bar taking a drink and "Catfish Kid" walked up and asked if he could have a drink. Appellant replied, he could if he would buy it; that he presumed it was there for sale. "Catfish Kid" then said, "You don't know me?" Appellant replied he remembered him, and that he seemed to be in better condition now than the last time he saw him; that the last time he saw him he had helped to walk him about after he had taken some morphine with suicidal intent some three years before. "Catfish Kid" seemed to take offense at this statement, and said to appellant he did not care to have any trouble with him, and to go away and let him alone. Appellant then said he moved away after taking a drink, to the north end of the bar, that "Catfish Kid" followed him, and continued to make complaint of the statement about the morphine, and finally said to appellant that he was a low son-of-a-bitch. Appellant told him that was something he would not take and struck at him with his fist, and "Catfish Kid" struck him in return a blow or two. Appellant said he was then handed a stick, a piece of chair-round, and as he undertook to pull it around in front of him, Mr. Savage took it away from him. "Catfish Kid" remarked that he would "beat his damned brains out and kill him." Appellant thereupon left the saloon and looked around, and walked up the street three doors, about sixty or seventy feet, to a pawn shop, secured a pistol and returned. His testimony is practically the same as the other witnesses with reference to his invitation to the crowd to drink and their refusal, and his testimony practically coincides with other witnesses with reference to his position on the beer keg, and

"Catfish Kid" striking him in the face with the pretzel, and Plemmon's taking the pistol from him, and the deputy sheriff coming in and taking the pistol and going out with it. Appellant says when he went out of the saloon if he had found a peace officer he would have reported the matter to him at once, but there was none there and none to be seen. This is the state of case under the record, stated perhaps more fully than was necessary.

Under this state of facts, appellant contends he was not guilty of violating the law in carrying the pistol; that he had no intention of violating it, etc. We are of opinion that the facts are sufficient. Under appellant's own statement he went out some distance, secured a pistol and. returned, evidently anticipating trouble with "Catfish Kid." There was no immediate and pressing danger to appellant's life; nor was there such an immediate and pressing danger as authorized him to go out and arm himself and return to the scene of the difficulty. He need not have left the place. He did not have to do so, but he did; armed himself and returned. He could have as easily remained away or having gone away he could have found an officer and secured the arrest of "Catfish Kid," and it is shown that immediately after he was disarmed an officer did appear. But from any view of the law, we do not believe the facts here justified appellant in going off, arming himself and returning, at least to the extent of exempting him from punishment for carrying the pistol.

The judgment is affirmed.

*Affirmed.*